IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY D. JUMPER, )<br>)<br>       Plaintiff, )<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>       Defendant. ) | Case No. CIV-12-276 -SPS |

## OPINION AND ORDER

The claimant Mary D. Jumper requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on January 18, 1951, and was sixty years old at the time of the applicable administrative hearing (Tr. 41). She completed three years of college and earned a license as a Certified Nurse's Aide (CNA), and has worked as a CNA (Tr. 32, 165). The claimant alleges she has been unable to work since August 22, 2009, due to emphysema, anxiety, depression, diabetes, high blood pressure, arthritis, high cholesterol, heart murmur, ulcer, being legally blind in the left eye, and bladder problems (Tr. 161).

### Procedural History

On August 27, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Michael A. Kilpatrick held an administrative hearing and determined the claimant was not disabled in a written decision dated March 30, 2011 (Tr. 21-33). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, limited to simple, unskilled tasks and detailed, semi-skilled tasks (such as the job she was currently performing) but no complex, skilled tasks (Tr.

25-26). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a CNA (Tr. 32).

## Review

The claimant contends that the ALJ erred: (i) by failing to find that her heel spurs, bladder problems, left eye blindness, and osteoarthritis were severe impairments; (ii) by failing to properly assess her RFC; (iii) by failing to properly assess her credibility; and (iv) by improperly finding that she could return to her past work as a CNA. The Court finds these contentions unpersuasive, and the Commissioner's decision must therefore be affirmed.

The medical evidence reflects that the claimant is blind in her left eye (Tr. 456); has complained on several occasions of vertigo or dizziness (Tr. 291, 306); has calcaneal spurs on her left foot (Tr. 317); and has had several urinary tract infections (Tr. 336). Dr. Jennifer Scoufos treated the claimant for such an infection in March 2010, and again in July for stiffness and back pain (Tr. 283-84). On November 4, 2010, Dr. Scoufos treated the claimant for migraines and noted that the claimant had a urinary tract infection three weeks previously, that she had swelling in her hands and face, and that she could not afford a colonoscopy at the time (Tr. 280). Although there are no corresponding records or treatment notes, there is a copy of a prescription dated November 8, 2010, which states that the claimant cannot stand on her feet for prolonged time periods due to heel spurs, and that she needed to sit after five minutes of standing (Tr. 282). On January 17, 2011, Dr. Scoufos completed a Medical Source Statement, indicating that the claimant could lift less than ten pounds occasionally and frequently, that she could stand/walk less than two

hours in an eight-hour workday, that she could sit less than six hours in an eight-hour workday, and that she was limited in pushing/pulling in both the upper and lower extremities.  Additionally, Dr. Scoufos indicated that the claimant could never climb, kneel, crouch, or crawl, and only occasionally balance, and that she was limited in manipulative functions, but unlimited as to visual, hearing, and speaking functions. Additionally, she checked that the claimant was limited in temperature extremes, humidity/wetness, and hazards.  In support, Dr. Scoufos noted that the claimant has a history of arthritis since age eight (Tr. 485-87).

A state agency physician examined the claimant and found she had osteoarthritis (but her strength and range of motion appeared preserved despite pain in multiple joints), hypertension, diabetes, and COPD (Tr. 244).  The claimant had 20/30 vision in the right eye and the left eye was all blurry; her gait was stable and steady without using assistive devices, and she could rise and ambulate appropriately; and she had no significant range of motion deficit but did complain of pain in her feet throughout the exam (Tr. 243).

On November 23, 2009, a state agency physician opined that the claimant had an anxiety disorder not otherwise specified, as well as the medical impairments of diabetes, high cholesterol, high blood pressure, bladder problems, ulcers, blood circulation problems, bone spurs, severe headaches, blindness in her left eye, and a history of gall bladder surgery.  She assessed the claimant with a Global Assessment of Functioning (GAF) score between 60-69 (Tr. 240).  The examiner's notes indicated that the claimant's short term memory, concentration, and abstract thinking appeared intact, as well as expressive and receptive language skills, and that she appeared capable of understanding

and carrying out simple instructions. Additionally, it was noted the claimant had recently completed an eight-hour workday including medical charting and counting medications (Tr. 241).

At the administrative hearing, the claimant testified that she was working less than thirty hours a week as a CNA med aide technician, averaging seven and a half to eight hours on the days she worked (Tr. 44). She testified that she stopped working full time due to her arthritis and bladder problems, that she had been dealing with her arthritis since she was eight years old, and that she was "pretty well crippled" in her arms, shoulder, knees, and sometimes feet (Tr. 45). She stated that she had to switch to doing the medications because of her health, including severe bladder problems that she has had all her life that cause a "lot of urgency, a lot of burning" (Tr. 45-46). She said that she sometimes goes home early, or calls in, and was in the process of putting in her notice (Tr. 47). The claimant indicated that she slept four to five hours a night, but that pain and her bladder woke her up (Tr. 48). She also stated that she has heel spurs on both feet and cannot stand very long (Tr. 48-49), and that she had been in two separate car accidents that have injured her neck and shoulder (Tr. 50).

In his written opinion, the ALJ found that the claimant's only severe impairment was her anxiety (Tr. 23). He summarized the claimant's hearing testimony as well as the medical evidence, finding that the medical evidence did not support her other allegations, because her treatment had largely been outpatient for heel spurs and headaches, and for vertigo related to not taking blood pressure medications (Tr. 27). The ALJ also discussed the claimant's mental health treatment, noting it had been largely limited to prescriptions

for antidepressants (Tr. 27). The ALJ observed that the state agency physicians had all found the claimant's mental impairments to be nonsevere, but indicated that he had given the claimant "the benefit of every possible doubt" to find that she could perform unskilled and semi-skilled tasks, but not complex, skilled tasks. In support, the ALJ noted that the claimant was still working as a CNA and had done so for many years (Tr. 28, 31), despite the claim in the third party function reports from her daughter and husband that she had never been able to do much (Tr. 28) and the absence of any evidence that her condition had worsened in recent years (Tr. 31). The ALJ also noted there was very little evidence in the record to support the claimant's allegations during the relevant period, which reflected an absence of regular treatment (Tr. 29).

The ALJ also discussed Dr. Scoufos's treatment notes (including the "prescription pad" limitation on the claimant's ability to stand) and the medical source statement that she prepared for the claimant, which he gave little weight because Dr. Scoufos was not a specialist in orthopedics, rheumatology, psychiatry, or other fields that treat arthritis or mental impairments; because Dr. Scoufos treated the claimant infrequently (three times in 2010); and because treatment had been limited to conservative prescription medication in modest dosages (Tr. 27-28). The ALJ also found Dr. Scoufos's opinion at odds with the fact that the claimant was still working eight-hours days about three days a week (Tr. 30). The ALJ concluded that the sum total of the evidence indicated the claimant was not disabled (Tr. 32).

The claimant first contends that the ALJ erred by failing to classify her heel spurs, bladder problems, left eye blindness, and osteoarthritis as severe impairments at step two.

-7-

Assuming *arguendo* this *was* error by the ALJ, it was nevertheless harmless because the ALJ did find the claimant's anxiety to be a severe impairment.  This obligated the ALJ to consider *all* of the claimant's impairments, severe or otherwise, in subsequent stages of the sequential evaluation, including the determination of the claimant's RFC at step four.  *See, e. g., Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal . . . the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].  *See also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("At step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523; Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

  The claimant next contends that the ALJ failed to properly determine her RFC at step four, *i. e.*, that he failed to provide any limitations corresponding to her non-severe impairments of heel spurs, bladder problems, left eye blindness, and osteoarthritis.  The Court finds that the ALJ did not, however, commit any error in determining the

-8-

claimant's RFC. He noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including in particular Dr. Scoufos, who was the only physician to impose any physical limitations on the claimant that were inconsistent with her RFC. As Dr. Scoufos was a treating physician, the ALJ was required to give her medical opinions controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley,* 373 F.3d at 1119, *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that her opinions were not entitled to controlling weight, he was nevertheless required to determine the proper weight to give such opinions by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject any of Dr. Scoufos' medical opinions entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the

weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's analysis of the opinions of Dr. Scoufos is set forth above. The Court finds that the ALJ considered those opinions in accordance with the appropriate standards and properly concluded they were entitled to little weight. The ALJ thus did not commit error in failing to include any limitations imposed by Dr. Scoufos in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant also contends that the ALJ erred in determining her RFC by failing to properly analyze her credibility. A credibility determination is entitled to deference unless the ALJ misreads the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In assessing the claimant's credibility in this case, the ALJ concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," and noted that there existed "very little in the way of actual medical evidence" to support her claims of severe, disabling physical and mental problems (Tr. 26-32). In reaching this conclusion, the ALJ mentioned the applicable credibility factors and cited evidence supporting his finding that the claimant's subjective complaints were not credible. He specifically reiterated the claimant's own reports, and noted that her statements were inconsistent with allegations of disabling pain, *e. g.*, the infrequency of her treatment and the fact that she has "never been able to do much" but had been working for years (Tr. 26-32). The ALJ linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of her credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The claimant's final contention is that the ALJ erred in finding that she could still perform her past relevant work as a CNA. This contention focuses in part on the ALJ's alleged failure to properly determine her RFC (which the Court has already rejected) but also upon the alleged failure by the ALJ to determine the demands of the claimant's past relevant work before determining she could return to such work with her RFC. *See, e. g., Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996) (Step four of the sequential analysis requires the ALJ to evaluate a claimant's RFC, "determine the physical and mental demands of claimant's past relevant work," and then conclude "whether claimant

-11-

has the ability to meet the job demands" of her past relevant work using the determined RFC.). The ALJ determined the claimant could perform the full range of work at all exertional levels, so there was no question she could perform the physical demands of her past relevant work. And as to the mental demands of such work, the ALJ elicited testimony from a vocational expert at the administrative hearing. *See, e. g., Doyal v. Barnhart,* 331 F.3d 758, 761 (10th Cir. 2003) ("An 'ALJ may rely on information supplied by the VE at step four.'"), *quoting Winfrey,* 92 F.3d at 1025. The vocational expert testified that the only mental demand of the claimant's past relevant work was that she be able to perform simple, unskilled task and detailed semi-skilled tasks, but not complex skilled tasks (Tr. 53). Based on such testimony and the claimant's RFC, the ALJ properly determined that the claimant could return to her past relevant work as a CNA (Tr. 32). *See Winfrey,* 92 F.3d at 1025 ("[A] VE may supply information to the ALJ at step four about the demands of claimant's past relevant work," but "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work."). The ALJ committed no error in this regard.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and that the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

**DATED** this 26th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma